## (December 6, 1948.)

In the Matter of a Plan for the Readjustment of the Rights of the Holders of Mortgage Investments Guaranteed by NEW YORK TITLE AND MORTGAGE COMPANY.

In the Matter of the Application of BX CORPORATION, Respondent.

ROBERT E. DINEEN. Superintendent of Insurance of the State of New York, as Liquidator of NEW YORK TITLE AND MORTGAGE COMPANY, Appellant; EDNA M. WILLIAMSON, Respondent.

Order, so far as appealed from, affirmed, with $20 costs and disbursement to the respondents.

VAN VOORHIS, J. (dissenting). The New York State Superintendent of Insurance, as liquidator of New York Title and Mortgage Company, appeals from so much of an order entered October 1, 1947, as adjudges that interest differential claims exist in favor of certain mortgage certificate holders. A statement is necessary of the facts leading up to this dispute.

Certain *mortgage investments* issued and guaranteed by New York Title and Mortgage Company were reorganized under chapter 745 of the Laws of 1933, as

amended, known as the Schackno Act, by a plan approved by the Supreme Court. Pursuant to said plan, six first mortgages, each covering one of the six apartment house buildings in a group in the Bronx collectively known as the Workers Colony apartments, were acquired by petitioner BX Corporation for servicing and ultimate liquidation for the benefit of the mortgage participation certificate holders. This company, sometimes referred to as the new corporation, was organized as a vehicle to aid in the reorganization. The subject real properties were purchased by BX Corporation on foreclosure, and have been administered for the benefit of the certificate holders. Pursuant to said plan, there were issued to the certificate holders of each mortgage, to evidence their interests in BX Corporation, a separate class of stock and series of debentures corresponding to the particular mortgage in which the certificate holder owned certificates, the issuance of such stock being at the rate of one share of stock for $100 principal amount of mortgage certificate, and of such debentures on the basis of one debenture in the principal amount of $100 for each share of stock. Only two series are directly involved in this proceeding, known as BX-7 and BX-9. All of these debentures matured on December 1, 1944, and required BX Corporation to pay interest thereon (only out of net income derived from the respective mortgage of the property securing the particular series) at the rate of 3% per annum from December 1, 1934, to June 1, 1939, and at the rate of 4% per annum from June 1, 1939, to December 1, 1944. The mortgage certificates were not cancelled upon the issuance of securities in the new corporation, but it was stamped upon them that debentures and stock of BX Corporation had been issued in respect thereto.

At the time of the entry of the order of liquidation of the New York Title and Mortgage Company, it was the owner of an unsold portion in each of the said six mortgages, and the Superintendent of Insurance, as liquidator of the said company, succeeded to such equity. To evidence the title company's equity in each of the six series, there were issued to the superintendent, as liquidator, shares of stock of BX Corporation denominated as Class S stock, together with debentures of each of the six series corresponding to those in which the title company's equity existed, on the same basis and at the same rate as the securities issued to the public certificate holders. By orders of the Supreme Court dated December 22, 1937, the interests of the liquidator were subordinated, in each of the said six series pertaining severally to said mortgages, to the interests of the other stock and debenture holders. The order governing series BX-7, involved herein, directed that interest and dividends thereafter accruing on the stock and debentures held by the liquidator should be distributed among the other debenture holders and stockholders, or used for the payment of necessary maintenance expenses, "until such time as the entire, full and complete principal amount of all outstanding Mortgage Participation Certificates issued by New York Title and Mortgage Company in the mortgage issue known as Series BX-7, together with interest thereon at the guaranteed rate of 5½% per annum accrued to date and continuing to the date of payment, shall have been paid in full, whether said payment be by interest on said Series BX-7 Debentures of BX Corporation or by payment on account of principal thereof, or by dividends on the said shares of Class BX-7 stock of BX Corporation ". The orders governing the other series, including BX-9, were in the same form..

The present controversy arises due to a paragraph of the plan of reorganization, which provided that moneys received by BX Corporation in liquidation should be applied "to the creation of a sinking fund for the retirement of debentures " in the different series, on the basis that if on any June 1st or December

1st there should be available in the sinking fund applicable to Series BX-7 or BX-9 at least $2,000, the new corporation should retire debentures. It was required to give notice in a prescribed manner to all debenture holders in the particular series affected, and the plan then provided: "Debenture holders desiring to redeem their debentures shall then forward the same to the new corporation within thirty days from the mailing of said notice, together with a statement of the price at which they are willing to surrender the same. The new corporation shall accept the lower offers received to an amount sufficient to exhaust as nearly as practicable the available funds. If two or more offers so received at the same price are more than sufficient to exhaust the available funds, the debentures to be so redeemed shall be determined by lot. If the offers so received are not sufficient to exhaust the available funds, the new corporation may purchase debentures for retirement in the open market. If no such purchases can be made, the funds remaining shall be distributed pro rata among the debenture holders in the particular series affected and applied against reduction of principal. All debentures shall be so retired only upon a simultaneous retirement of the corresponding certificates. It is the intent of the provisions incorporated in the foregoing paragraph that to the extent that there shall be a partial or complete reduction in the principal payable upon the debentures in any particular series, there shall be a corresponding reduction in the principal payable upon the mortgage securing the same."

All of the Series BX-7 and BX-9 securities owned by the public have been retired through the operation of this sinking fund. The first ones to be paid off were the holders who offered to sell at less than par pursuant to invitations to bid. The rest were subsequently retired by pro rata distribution. The question is whether they have been paid as much by way of interest as they are entitled to receive.

The amounts which have been paid in retirement of these securities, both in the case of the offering and the nonoffering holders, included an accumulation of interest accrued at the rates carried by the debentures issued by BX Corporation, which were 3% and 4% per annum over different periods of time. There are on hand sufficient funds which could be used to make an additional distribution to all public holders in these two series, so as to augment what they have received by way of interest by accruing it at the 5½% rate carried by the certificates that were issued by the title company. This proceeding is brought to obtain an adjudication concerning whether they are entitled to this interest differential. The reasoning on which it has been held that the holders of these securities should receive these additional sums, in priority to any distribution to the liquidator which would go to the title company's other creditors (i. e., to certificate holders in other series who have been less fortunate), is that the title company's certificates in Series BX-7 and BX-9 were not cancelled upon the formation of BX Corporation, that the BX Corporation's debentures and stock were not issued to certificate holders in substitution for their certificates, but merely as a convenient method of liquidating the certificates, and that, if there were funds left over to pay more than the debentures called for, they should be disbursed to public holders up to an amount which would be sufficient to enable them to receive as much as the title company was obligated to pay to them under the certificates. This conclusion is clearly correct in the case of the nonoffering holders, whose securities were retired by pro rata distribution by installments as the money became available after the offering security holders had been paid, inasmuch as the title company had guaranteed the certificates, and the reorganization plan

provided (as it was authorized to do by section 7 of the Schackno Act; L. 1933, ch. 745) that such guaranty would not be discharged by the adoption of the plan. Manifestly, the effect of the guarantee was to protect the owners of participation certificates in the event that the proceeds of their series mortgage should be inadequate, and it necessarily followed that the liquidator could equitably receive nothing from these particular mortgages for the benefit of the title company's other creditors, until the BX-7 and BX-9 certificate holders had been paid in full in accordance with the obligations of their certificates. That was the reason for the orders subordinating the liquidator's interest to that of the public security holders. The orders of subordination provided, as hereinbefore stated, that the liquidator was to receive nothing from these mortgages until the public certificate holders had been repaid their principal, in full, "with interest thereon at the guaranteed rate of $5\frac{1}{2}\%$ per annum"— that being the rate carried by the certificates.

It follows that the Series BX-7 and BX-9 holders who did not voluntarily surrender their securities for retirement and cancellation, are entitled to be paid accrued interest at the full rate of $5\frac{1}{2}\%$. That is conceded by the liquidator.

The controversy arises over whether those holders who engaged in competitive bidding, pursuant to the sinking fund provision in the reorganization plan, should be accorded similar treatment. The petitioner herein, BX Corporation, has asserted successfully in their behalf, that they have the same right to be paid this interest differential as though they had not previously elected to surrender their securities for cancellation at a lower price, in order to obtain immediate payment out of the first avails of the sinking fund. With this conclusion I do not agree. They acted under no compulsion. The sinking fund clause in the plan provided, as has been stated, that "The new corporation shall accept the lowest offers received to an amount sufficient to exhaust as nearly as practicable the available funds." It was further provided, that "All debentures shall be so retired only upon a simultaneous retirement of the corresponding certificates." The sentence last quoted demolishes the argument that these bidders agreed to the discharge of the liability of the BX Corporation only, but not to that of the title company. BX Corporation, as the referee has pointed out, was simply an instrumentality to facilitate the liquidation of the liability of the title company on these mortgages under the plan of reorganization. It fulfilled a role, defined by the plan, wherein it acted in certain respects on behalf of the title company and its other creditors, and in other respects on behalf of the certificate holders other than the liquidator in Series BX-7 and BX-9. The object of the plan, in directing that the funds first received by BX Corporation out of the title company's Series BX-7 and BX-9 mortgages should be paid to the lowest bidders, was, in consideration of greater promptness and certainty in payment, to eliminate as cheaply as possible all claims of these holders against the title company in reorganization, not just against BX Corporation, which was merely a vehicle employed to aid in accomplishing the reorganization. These holders were paid with money that in equity belonged to the title company, and at a time when it could not be known whether or not enough money would be realized to pay even the other certificate holders in the same series. They agreed to take less in order to avoid that risk. The intention was plainly that when they were paid what they agreed to accept, they were through. The argument advanced by respondent-corporation is faulty that the printed form of sale for debentures, in stating that the "Guaranteed Mortgage Participation Certificate issued by New York Title and Mortgage Company, shall, *ipso facto,* without further act or writing or the need therefor, become and be forever surrendered, released, settled and dis-

charged ", referred merely to liability of BX Corporation under said certificates. It was liable on its debentures and stock, but not on the mortgage participation certificates which had been issued by the title company. To speak of the liability of BX Corporation on the certificates would be meaningless. Whatever was paid to the certificate holder out of stock or debentures was to be credited against the certificate, but BX Corporation did not issue the certificate and was not responsible for its payment. Therefore, when the plan required the successful bidder to surrender his certificate for retirement along with his debentures and stocks, it could have meant only that all future recourse against the title company was being simultaneously relinquished. The offers of sale of debentures and the invitation to bidders referred to the plan of reorganization, whose provisions are controlling. The language of the plan, in requiring the simultaneous retirement of the corresponding certificates, contains not the shadow of an implication that the liability of the title company was to be kept alive. It was clearly intended that they should be retired for the benefit of the title company, that is to say, of its creditors in the person of certificate holders in other series who were not paid in full out of their respective mortgages.

The determination below is based upon the guarantee by the title company of its certificates. The reasoning is sound respecting the nonoffering holders, but the guarantee could not have prevented, as it seems to me, the holders on whose account this proceeding has been brought from electing voluntarily to surrender their rights for earlier payment. It may be observed, in passing, that the funds which would be resorted to in order to pay to them this interest differential, would not come out of the general assets of the title company and be paid by the liquidator pursuant to the guarantee, but would come from assets held by BX Corporation and realized by it from the BX-7 and BX-9 Series mortgages. The only effect of the guarantee on them was to bring about the orders of subordination of the liquidator's interest, which was an equitable necessity in view of the existence of the guarantee. If there were any interpretation under which it could be said that BX Corporation was liable on the title company's certificates, the situation here presented would fall within it. These debenture holders are asking to be paid by BX Corporation in satisfaction of a claim arising out of the certificates, which is not provided for by the debentures or stock. Therefore, if there be any basis for the idea that the successful bidders surrendered only the liability of the BX Corporation on these certificates, then that would be the same liability which is now being asserted.

Some argument has been made that accrued interest at 5½% to the date of retirement entered into the offering prices, and was required to be paid by the language of the bids themselves. The invitation to bidders prescribed that offers must be made at less than par, and did not specifically refer to accrued interest, but the bids which were submitted must be deemed to have been computed on the basis that the interest to be paid to the successful bidders would be that carried by the debentures. There could have been no question about this if the offerers had stated expressly that their stock, debentures and certificates were being offered at a stated figure, with accrued interest to the date of retirement at the rates provided in the debentures. What the offers did state was that these securities were being surrendered together with *future* interest on the debentures. The implication is that the consideration for the surrender and cancellation of these securities was the amount bid plus *accrued* interest on the debentures. There can be no doubt that after the acceptance of these offers and payment of the amounts bid all three types of securities were extinguished.

The question on this phase of the case is merely, what were the amounts bid insofar as accrued interest is concerned? If the offering BX-7 and BX-9 holders have been paid the full amount of their bids, that is the end of the matter. If they have not been paid in full, if their bids are to be interpreted as calling for payment of accrued interest at the 5½% rate carried by the underlying certificates instead of at the lower rates of the debentures, then the successful bidders would be entitled to recover this interest differential on the theory that it is part of the redemption price of their securities. But there is no basis for such as conclusion. It was the manifest intention that the amount which a successful bidder was to be paid, simultaneously with delivering up his securities, was to be the final payment. The securities were thereupon to be cancelled, and the holder could be entitled to nothing more. At that time it could not be known how much more would be realized from the liquidation, or whether there would ultimately be enough to pay any interest differential of 2½% and 1½%. Consequently the debenture rate was adopted, as the language of the bids implies. After payment of that, together with the principal amount bid, the transaction was complete.

If insufficient offers were received to exhaust the moneys from time to time in the sinking fund, the new corporation was empowered to purchase debentures for retirement in the open market before making pro rata distribution among the nonoffering holders. If that alternative had been resorted to, it could hardly be contended that sellers in the open market could thereafter recover more than the amounts for which they had agreed to sell their securities. That is also true in the case of those who offered their securities for retirement in response to invitations to bid, which were sent out according to the plan.

No similar question to this was presented in *Matter of Home Title Ins. Co.* (255 App. Div. 635).

The order appealed from should be modified so as to confirm the report of the referee insofar as it establishes the right to the said interest differential of those holders only who did not surrender for cancellation their securities in Series BX-7 and BX-9, and which were redeemed by BX Corporation by pro rata distributions, and by eliminating any determination that the holders are entitled to such interest differential whose securities were retired as a result of competitive bidding pursuant to the sinking fund clause in the plan of reorganization, and, as so modified, should be affirmed, with costs to appellant.

Peck, P. J., Glennon, Dore and Cohn, JJ., concur in decision; Van Voorhis, J., dissents and votes to modify.

Order, so far as appealed from, affirmed, with $20 costs and disbursements to the respondents. No opinion.